**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACKMAN FINANCIAL CORP., | ) | FILED: MAY 23, 2008 |
| | ) | 08CV3007        TG |
| Plaintiff, | ) | JUDGE KENNELLY |
| | ) | MAGISTRATE JUDGE COX |
| v. | ) | |
| | ) | |
| ANTHEM LIFE INSURANCE and | ) | Case No. 2008 M1 130049 |
| WELLPOINT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF REMOVAL</u>

Defendants, Anthem Life Insurance and Wellpoint, Inc. ("Defendants"), pursuant to

28 U.S.C. § 1441, file this Notice of Removal with respect to Case 2008 M1 130049 in the

Municipal Division of the Circuit Court of Cook County, Illinois.  In support of this notice,

Defendants state as follows:

      1.      On April 15, 2008, plaintiff Jackman Financial Corp. ("Plaintiff") filed a

complaint titled *Jackman Financial Corp. v. Anthem Life Insurance and Wellpoint, Inc.* in the

Municipal Division of the Circuit Court of Cook County, Illinois (the "state court action").

Defendants were served with the complaint and summons on April 24, 2008.[1]  (Copies of the

complaint and other papers served upon Defendants are attached as Exhibit 1).  These documents

constitute all "process, pleadings, and orders" served upon Defendants in the state court action

seeking recovery against them.  28 U.S.C. § 1446(a).

---

[1] Defendants reserve the right to contest the validity of service pursuant to all applicable local, state and
federal rules of civil procedure.

2.      Defendants may remove this action pursuant to 28 U.S.C. § 1441(b) because plaintiff's claims arise under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*

3.      "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).  Therefore, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court."  *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

4.      Moreover, a cause of action filed in state court that comes within the scope of the enforcement provisions of § 502(a) is removable to federal court even where (as here) the complaint does not on its face allege that it arises under ERISA.  "Because ERISA displaces all state law within its scope, such a case necessarily arises under federal law, namely under ERISA, and so is removable despite the complaint's reticence."  *Hays v. Cave*, 446 F.3d 712, 714 (7th Cir. 2006); *see, e.g.,Davila*, 542 U.S. at 211 ("In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by the defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)."); *Metropolitan Life Ins. Co.*, 481 U.S. at 67; *Lister v. Stark*, 890 F.2d 941, 944 (7th Cir. 1989).

5.      ERISA's applicable enforcement provisions include:

- ERISA § 502(a)(1)(B), which provides that an employee benefit plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); and

- ERISA § 502(a)(3), which provides that an employee benefit plan participant may bring a civil action "to enjoin any act or practice which

violates any provision of [ERISA] or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."  29 U.S.C. ¶ 1132(a)(3).

6.      Plaintiff sues to recover life insurance benefits.  The life insurance policy at issue here was issued under an employer-sponsored life insurance plan for employees and their dependents (the "Plan") which was offered by Wellpoint to its employee, Katrina Short.  (A copy of the Certificate of Coverage describing the terms of the Plan is attached as Exhibit 2).  Pursuant to the Plan, Ms. Short had elected coverage of her dependent, LaMar Anderson.  At their core, Plaintiff's claims all seek benefits under the Plan, due to the death of Anderson.  Specifically, Plaintiff seeks relief for Defendants' alleged breach of fiduciary duty for allegedly paying benefits under the Plan to the wrong party and challenges Defendants' refusal to pay Plaintiff benefits under the Plan.  These claims fall within the enforcement power of either ERISA § 502(a)(1)(B) or § 502(a)(3) and are thus suitable for removal to federal court.

7.      Plaintiff appears to bring three causes of action against Defendants in its complaint.  First, Plaintiff alleges that it is entitled to life insurance benefits under the Plan as the assignee of Katrina Short, a participant in the Plan.  (Compl. ¶¶ 26-32).

8.      Second, Plaintiff alleges that Defendants breached their fiduciary duty by knowingly paying the life insurance proceeds to Short instead of to Plaintiff.  (*Id*. ¶ 35).

9.      Third, Plaintiff alleges that Defendants are liable for bad faith refusal to pay insurance claims under Ga. Code § 33-4-6.  (*Id*. ¶¶ 38-40).

10.      Plaintiff's prayer for relief seeks, among other relief, "the full amount of the Assignment," referring to the life insurance benefits under the Plan, which allegedly had been assigned by Ms. Short to the Plaintiff.  (*Id*. p. 9).

11.      In short, Plaintiff's complaint is removable even though Plaintiff does not specifically cite to ERISA in its complaint because it seeks to obtain life insurance benefits under

the Plan, an employee benefit plan as defined by 29 U.S.C. § 1002(1), and thus a plan regulated by ERISA.  29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was… established or maintained… for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,… benefits in the event of… death.").  Resolving Plaintiff's claims for life insurance benefits under the Plan will necessarily require reference to and interpretation of an employee benefit plan, providing another basis for removal to federal court.  *See Boggs v. Boggs*, 520 U.S. 833 (1997); *Sembos  v. Philips Components,* 376 F.3d 696, 703 (7th Cir. 2004); *Anderson v. Chrysler* Corp., 99 F.3d 846, 856 (7th Cir. 1996); *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 767 (7th Cir. 1993).  Additionally, removal to Federal Court is proper here because ERISA preempts Plaintiff's Georgia claim for bad faith refusal to pay insurance claims.  *See Cockey v. Life Ins. Co. of North Am.*, 804 F.Supp. 1571, 1576 (S.D. Ga. 1992) (holding plaintiffs' claim for "bad faith damages" under Ga. Code § 33-4-6 is preempted by ERISA where plaintiffs sought damages for defendant's alleged refusal to timely pay death benefits claim.)  In any event, because Plaintiff's core claims arise under ERISA, the Court would have supplemental jurisdiction over the bad faith claim pursuant to 28 U.S.C. § 1367.

12.    Original federal question jurisdiction over Plaintiff's core claims unquestionably is vested in this Court by 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.  *See Davila*, 542 U.S. at 207-08 (ERISA is one of the federal statutes which "completely pre-empts the state-law cause of action . . . even if pleaded in terms of state law, [because it] is in reality based on federal law") (citation omitted); *see also* 28 U.S.C. § 1331.

13.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), in that it is being filed within 30 days after Defendants' receipt by service of process, on April 24, 2008, of the complaint.

14.     Written notice of the filing of this Notice of Removal has been given to Plaintiff together with a copy of the Notice of Removal and supporting papers, and has been filed with the Clerk of the Circuit Court of Cook County, Illinois, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants respectfully request that this Court assume full jurisdiction of this proceeding as if originally filed in this Court, and issue any orders necessary to stay proceedings in the state court action.

**DATED: May 23, 2008**                              Respectfully submitted,
                                                     SEYFARTH SHAW LLP


                                                     By:  s/Laura E. Reasons                          
                                                     One of Its Attorneys


Ian H. Morrison (imorrison@seyfarth.com)
Laura E. Reasons (lreasons@seyfarth.com)
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing Notice of Removal was served upon:

Jessica Tovrov
TOVROV LAW OFFICES LLC
17 North State Street
Suite 1700
Chicago, Illinois 60602
Tel:  (312) 252-7362
Fax:  (312) 264-0668

by having the same sent via messenger this 23rd day of May, 2008.

s/Laura E. Reasons
Laura E. Reasons

# EXHIBIT 1

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/24/2008
CT Log Number 513350267

|||||||||||||||||||||||||||||||||||||

**TO:**    Pam Williams
WellPoint, Inc.
120 Monument Circle
Indianapolis, IN 46204-4903

**RE:**    **Process Served in Indiana**

**FOR:**    WellPoint, Inc. (Domestic State: IN)

RECEIVED 4/25/08

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jackman Financial Corp, Pltf. vs. Anthem Life Insurance and Wellpoint, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Verified Complaint, Exhibits |
| **COURT/AGENCY:** | Circuit Court of Cook County, IL<br>Case # 20081130049 |
| **NATURE OF ACTION:** | Breach of Contract |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Indianapolis, IN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/24/2008 at 08:30 |
| **APPEARANCE OR ANSWER DUE:** | 5/27/08 |
| **ATTORNEY(S) / SENDER(S):** | Jessica Tcvrov<br>17 North State Street<br>Suite 1700<br>Chicago, IL 60602 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 798926923010<br>Email Notification, Pam Williams Pam.Williams@anthem.com<br>Email Notification, Louis Sparano louis.sparano@wellpoint.com<br>Email Notification, Debbie Cheffer debra.cheffer@wellpoint.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>251 E. Ohio Street<br>Suite 1100<br>Indianapolis, IN 46204<br>317-396-9747 |

Page 1 of 1 / PJ

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2120 - Served   2220 - Not Served   2620 - Sec. of State
2121 - Alias Served   2221 - Alias Not Served   2621 - Alias Sec. of State
Summons (This form replaces CCM 0646, CCM1 0646, CCM1 0651, CCMD 0648, and CCMD 0649-2 thru 6)   CCM N649-60M-9/15/06 ( )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### 1st MUNICIPAL DISTRICT

Name All Parties

JACKMAN FINANCIAL COP
_____ Plaintiff(s)

v.

ANTHEM Life INSURANCE
_____ Defendant(s)

Wellpoint INC
_____
Address of Defendant(s)

Case No. 2008 11 30049

Amount Claimed: $ ~~Overdue~~ $29,000

Appearance Filing/Return Date: 5/27/08

Status Date: _____

Trial Date: _____

Time: _____ Room: _____

## SUMMONS

To each Defendant:

   YOU ARE SUMMONED and required:

   1. To file your written appearance by yourself or your attorney and pay the required fee in:

☑ District 1: Richard J. Daley Center; 50 West Washington, Room 602; Chicago, IL 60602
☐ District 2: 5600 Old Orchard Rd., Rm 136; Skokie, IL 60077   ☐ District 5: 10220 S. 76th Ave., Rm 121; Bridgeview, IL 60455
☐ District 4: 1500 Maybrook Dr., Rm 236; Maywood, IL 60153

on ___MAY 27___, 2008, between the hours of 8:30 a.m. and 2:30 p.m.;

☐ District 3: 2121 Euclid, Rm 121; Rolling Meadows, IL 60008   ☐ District 6: 16501 S. Kedzie Pkwy., Rm 119; Markham, IL 60428
on _____, _____, before 9:00 a.m.

   2. File your answer to the complaint before 9:00 a.m. as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on the reverse side.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:

   This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

   This summons may not be served later than 3 days before the day for appearance.

THERE WILL BE A FEE TO FILE YOUR APPEARANCE. SEE FEES ON THE REVERSE SIDE OF THIS FORM.

Atty. No.: 34966

Name: Jessica Tovrov

Atty. for: JACKMAN

Address: 17 N. State St, Ste 1700

City/State/Zip: Chicago IL 60602

Telephone: 312.252-7362

WITNESS,

DOROTHY BROWN APR 15 2008

DOROTHY BROWN, Circuit Court Clerk

Date of Service: 4-24, 08
(To be inserted by officer on copy left with Defendant or other person)

[ SEE REVERSE SIDE ]

** Service by Facsimile Transmission will be accepted at: _____
                                   (Area Code)   (Facsimile Telephone Number)

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CCM N649-100M-9/15/06 ( )

APPEARANCE FEES INCLUDE A COUNTY LAW LIBRARY FEE OF $13.00, THE COURT AUTOMATION FEE OF $15.00, A DOCUMENT STORAGE FEE OF $15.00 AND THE MANDATORY ARBITRATION FEE OF $10.00 WHERE APPLICABLE.

APPEARANCE FEES (BASED ON AMOUNT OF CLAIM)
(ALL CASES; NO DISPUTE RESOLUTION CHARGED)

| | |
|---|---|
| FORCIBLE DETAINER (POSSESSION ONLY) | $133.00 |
| $1500.00 OR LESS | $133.00 |
| $1500.00 TO $15,000.00 | $143.00 |
| MORE THAN $15,000.00 | $163.00 |

JURY FEES ARE AS FOLLOWS:

CLAIMS FOR DAMAGES NOT IN EXCESS OF $10,000.00
*SIX-PERSON  $12.50
*TWELVE-PERSON JURY      $25.00 or
$12.50 if another party paid for a jury of six

CLAIMS FOR DAMAGES NOT IN EXCESS OF $15,000.00
*SIX-PERSON  $115.00
*TWELVE-PERSON JURY      $230.00 or
$115.00 if another party paid for a jury of six

CLAIMS FOR DAMAGES IN EXCESS OF $15,000.00
*TWELVE-PERSON JURY      $230.00

*THESE FEES MAY BE WAIVED BY APPROPRIATE COURT ORDER. YOU HAVE THE RIGHT TO FILE A PETITION SEEKING SUCH AN ORDER.

## NOTICE TO PLAINTIFF

You MUST select a return day of:
not less than 14 or more than 40 days after issuance of summons if amount claimed is $5000 or less;
not less than 21 or more than 40 days after issuance of summons if amount claimed is in excess of $5000.

## NOTICE TO DEFENDANT

1. If the complaint is notarized, your answer must be notarized.

For District 1 Cases Only:

2. On the specified Return Day, one of the following may occur:
   a. If you are sued for $5000.00 or less, you need not file an answer unless ordered to do so by the Court.
      (i)   If Plaintiff is not present, the case may be dismissed for want of prosecution.
      (ii)  If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an exparte default judgment against you for the amount claimed.
      (iii) If you have filed an appearance and are present on Return Day, trial may be held that day, or may be set for another day certain.
   b. If you are sued for more than $10,000.00, and if you have filed your appearance on time, you must file your answer no later than 10 days after the appearance date (return date) specified on the front of this form. If you have not filed your appearance or answer on time, the Plaintiff may obtain an exparte default judgment against you for the amount claimed. If Plaintiff is not present for the Default call, the case may be dismissed for want of prosecution. If you filed your appearance and have not filed your answer on time the Plaintiff may motion the court to enter a judgment.

3. Late filing of an appearance or answer will not relieve you from a judgment or default order except by court order.

'or District 2, 3, 4, 5 and 6 Cases:

4. If you are sued for more than $5000.00, you have 10 days from the Return Day to answer or otherwise plea.

5. On the specified Return Day, if you are sued for $5000.00 or less, you need not file an answer unless ordered to do so by the Court.

6. On the specified Status/Trial Day, one of the following may occur:
   a. If Plaintiff is not present, the case may be dismissed for want of prosecution.
   b. If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an ex parte default judgment against you for the amount claimed.
   c. If you have filed an appearance and are present on Status/Trial Day, trial may be held that day, or may be set for another day certain.

he following is applicable to District 3 cases only:

7. This case may/may not be heard on the day for apperance specified in summons.

8. If the claim is for personal injury, or is a civil case in which Plaintiff has filed a jury demand, you will be required to file your appearance in person or by attorney Return Day, and your answer as required by Par. 2(b) above.
   These cases will be assigned and heard in the Civil Jury Room _____ unless otherwise ordered by the Presiding Judge. Neither Plaintiff nor Plaintiff's attorney will be required to be present on Return Day. The case will be set for Status at 9:00 a.m., approximately 60 days from the date of filing. Plaintiff and Defendant will be required to appear in court on that status day.

9. Trial Rights of Property, Detinues, and Revivals of Judgment, Pro Se, and Forcible Detainer suits are returnable in Room _____ and are disposed of on a Return Day unless otherwise ordered by the Court.

34966

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, FIRST MUNICIPAL DIVISION

JACKMAN FINANCIAL CORP.,           )
                                   )
            Plaintiff,             )
                                   )
     vs.                           )
                                   )          Case No.
ANTHEM LIFE INSURANCE and          )
                                   )
WELLPOINT, INC.,                   )
                                   )
            Defendants.            )

## VERIFIED COMPLAINT

Plaintiff, Jackman Financial Corp., brings this Complaint against

Defendants, Anthem Life Insurance and WellPoint Inc., for breach of contract,

breach of fiduciary duty, and bad faith, and in support hereof, respectfully states

as follows:

### THE PARTIES

1.     Plaintiff, Jackman Financial Corp., is an Illinois corporation, with a

principal place of business at 5118 South Blackstone Avenue, Chicago, Illinois

("Jackman"). Jackman is a small finance company, which, among other things,

advances funds to pay funeral expenses in return for an assignment of the

proceeds of the deceased's life insurance policy.

2.     Defendant Anthem Life Insurance is an insurance company doing

business at 6740 North High Street, Worthington, Ohio, and is a licensed insurer

1

34966

CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, FIRST MUNICIPAL DIVISION

| | | |
|---|---|---|
| JACKMAN FINANCIAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. |
| ANTHEM LIFE INSURANCE and | ) | |
| | ) | |
| WELLPOINT, INC., | ) | |
| | ) | |
| | ) | APR 1 5 2008 |
| Defendants. | ) | |

### VERIFIED COMPLAINT

Plaintiff, Jackman Financial Corp., brings this Complaint against
Defendants, Anthem Life Insurance and WellPoint Inc., for breach of contract,
breach of fiduciary duty, and bad faith, and in support hereof, respectfully states
as follows:

### THE PARTIES

1.    Plaintiff, Jackman Financial Corp., is an Illinois corporation, with a
principal place of business at 5118 South Blackstone Avenue, Chicago, Illinois
("Jackman"). Jackman is a small finance company, which, among other things,
advances funds to pay funeral expenses in return for an assignment of the
proceeds of the deceased's life insurance policy.

2.    Defendant Anthem Life Insurance is an insurance company doing
business at 6740 North High Street, Worthington, Ohio, and is a licensed insurer

1

in Illinois ("Anthem"). Anthem is a wholly-owned subsidiary of Defendant WellPoint, Inc.

3.     Defendant WellPoint, Inc. is a corporation headquartered in Indianapolis, Indiana ("WellPoint"). WellPoint is the Blue Cross Blue Shield licensee in a number of jurisdictions, including Georgia.

## VENUE

4.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because part of the transaction out of which this suit arose occurred in Cook County, Illinois, in that Plaintiff's actions occurred in Cook County, and payment is owed in Cook County.

## FACTS

5.     Anthem Policy C00416 is a life policy that covered the life of LaMar Anderson, a resident of Columbus, Georgia (the "Policy").

6.     Because Mr. Anderson was a resident of the state of Georgia, the Policy is construed under Georgia law. *Restatement, 2nd Conflict of Laws, § 193.*

7.     Jackman does not have, and never did have a copy of the Policy, but believes that one or both of the Defendants has a copy.

8.     Nonetheless, certain provisions of the Policy can be assumed because they are mandated by Georgia law. O.C.G. § 33-25-3.

9.     The beneficiary under the Policy was Katrina Short, LaMar Anderson's mother, also a resident of the state of Georgia. On information and belief, Ms. Short is, or was at the time of the events in question, an employee of

2

Blue Cross Blue Shield of Georgia, one of the names under which one or both Defendants conducted business.

10.    Mr. Anderson died on December 2, 2007, and J.W. Jones Funeral Home, in Columbus, Georgia (the "Funeral Home"), was engaged to take care of the funeral arrangements.

11.    Reverend Jones, director of the Funeral Home, arranged for Jackman to pay for Mr. Anderson's funeral, and on December 4, Ms. Short assigned the Policy proceeds to Jackman. A true and correct copy of the Assignment is attached hereto as **Exhibit A**.

12.    Before advancing funds on policy proceeds, Jackman's regular practice is to make a preliminary call to the insurer to verify the policy and the amount of liens against it, if any.  This is common practice in the industry and insurers almost always provide the necessary information, along with the reservation that they do not warrant the accuracy.

13.    When, on December 4, Kiana Griffin, a Jackman employee, called Anthem for verification, she was told to communicate only with HR Solutions, Defendants' third party administrator.  On information and belief, HR Solutions is an arm of one or both of the Defendants, but regardless of its exact status, HR Solutions is their agent.

14.    When Ms. Griffin called HR Solutions, she was told that it would provide information only to the beneficiary and she was not the beneficiary.

3

15.    On December 5, 2007, Reverend Jones arranged a 4-way call among Ms. Griffin, Ms. Short, HR Solutions, and himself.  With all 4 persons on the call, Ms. Short informed HR Solutions that as Policy beneficiary, she had assigned the proceeds to Jackman, and accordingly, it could release policy information to Jackman.

16.    HR Solutions then provided initial verifications and Jackman transferred the necessary funds to the Funeral Home.  A true and correct copy of Jackman's December 6, 2007 Wire Transfer Entry is attached hereto as **Exhibit B**.

17.    On December 7, Jackman contacted HR Solutions to request a claim form and submission instructions.  HR Solutions refused to provide Jackman with a form or with any information at all, again stating that it would only deal with the beneficiary.

18.    On December 8, Ms. Griffin called HR Solutions again and was told that the claim form and submissions instructions had been sent to Ms. Short, as beneficiary.

19.    On December 17, Jackman called HR Solutions, identified the decedent and Policy number, informed the HR Solutions representative that Jackman held an assignment of the proceeds, and requested information about submitting a claim form. Once again, HR Solutions refused.

20.    Eventually, on December 26, Reverend Jones managed to obtain a claim form and other documentation from Ms. Short, and sent it to Jackman. Jackman completed the necessary forms, and sent them directly to Anthem (not

4

to HR Solutions) the same day. True and correct copies of Jackman's December 26 letter to Anthem, with its enclosures (except the Assignment, which is Exhibit A), is attached hereto as **Exhibit C**.

21.    Jackman heard nothing from Defendants until the early days of January, 2008, when it learned that payment had been made to Ms. Short, Defendants' "associate".

22.    On February 12, Jackman's counsel, wrote to Defendants explaining the situation and demanding payment.

23.    A flurry of correspondence followed in which Defendants refused not only to pay Jackman, but also to explain the reasoning behind this refusal. Instead of addressing the assignment and notice issues that Jackman had raised, Defendants simply repeated that they had paid the proceeds to "our associate Katrina Short", and had no obligation to Jackman. True and correct copies of this correspondence is attached hereto as **Group Exhibit D**.

24.    Georgia law provides that any policy of life insurance issued or delivered in the state of Georgia, must include the following:

> When a policy shall become a claim by the death of the insured, settlement shall be made upon receipt of due proof of death. . . If an insurer shall specify a particular period prior to the expiration of which settlement shall be made, the period shall not exceed two months from the receipt of such proofs. O.C.G § 33-25-3(a)(11).

### COUNT I - BREACH OF CONTRACT
### (Against Both Defendants)

25.     Jackman repeats and incorporates ¶¶ 1-24 above.

26.     The Policy is a contract between the Policy owner and Defendants. In return for premium, Defendants promised that at Mr. Anderson's death, the proceeds would be paid in accordance with the instructions of the designated beneficiary.

27.     By the December 4 Assignment, Ms. Short exercised her rights as beneficiary and directed Defendants to pay the proceeds to Jackman.

28.     No later than December 5, 2007, Defendants were on notice that the proceeds had been assigned.

29.     In paying the proceeds to Ms. Short, Defendants breached their contractual obligations, obligations that are enforceable by the beneficiary, or after assignment, by the beneficiary's assignee.   *Santiago v. Safeway Insurance Co.,* 396 S.E. 2nd 506, 507 (1990).

30.     In the March 6, 2008 letter, Defendants' counsel alleges that Jackman did not coordinate with Ms. Short to submit the Assignment, presumably implying that because Defendants did not receive the Assignment before paying the proceeds to the wrong party, Jackman failed to perform a condition precedent to payment which, in turn, excused Defendants from making proper payment.

6

31. If, in fact, this is Defendants' argument, it fails. It was HR Solutions' groundless refusal to provide Jackman with a claim form or even basic information that prevented Jackman from submitting the necessary documents any sooner. Party A to a contract cannot frustrate party B's ability to perform its contractual obligations and then excuse its own breach by B's failure to perform a condition precedent. *Hammond v. Bank of Newnan*, 217 Ga. App. 49, 50 (1995).

32. Because of Defendants' breach of contract, Jackman has been damaged to the extent of the Assignment, plus interest, fees, costs of collection and lost opportunity.

WHEREFORE, Jackman requests that this Court enter an order in its favor and against the Defendants, awarding it the full amount of the Assignment, plus interest, fees, and costs of collection.

## COUNT II - BREACH OF FIDUCIARY DUTY
### (Against Both Defendants)

33. Jackman repeats and incorporates ¶¶ 1-32 above.

34. After it had notice of the Assignment, no later than December 5, Defendants held the proceeds for Jackman in a fiduciary capacity.

35. Defendants violated their fiduciary duty by knowingly paying the proceeds to the wrong party.

36. As a result of Defendants' breach of fiduciary duty, Jackman has been damaged to the extent of the Assignment, plus interest, fees, costs of collection and lost opportunity.

WHEREFORE, Jackman requests that this Court enter an order in its favor and against the Defendants, awarding it the full amount of the Assignment, plus interest, fees, and costs of collection.

## COUNT III – BAD FAITH
### (Against Both Defendants)

37. Jackman repeats and incorporates ¶¶ 1- 38 above.

38. Under Georgia law, an insurer is guilty of "bad faith" when it refuses to pay, on grounds which are "frivolous and unfounded and . . . asserted without reasonable and probable cause." *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703, 302 S.E. 2nd 605 (1983).

39. Defendants' refusal to pay the proceeds to Jackman was frivolous and unfounded and without reasonable cause.

40. Defendants' refusal to provide any information or to explain their position demonstrates bad faith.

41. Georgia statutes, at § 33-4-6, provide:

(a) In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the

8

insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000, whichever is greater, and all reasonable attorney's fees for prosecution of the action against the insurer.

42.    As a result of Defendants' bad faith, Jackman has been damaged to the extent of the Assignment, plus interest, fees, costs of collection and lost opportunity.

43.    Defendants have not and cannot show any reasonable or probable cause for their refusal to pay Jackman according to the Assignment and Georgia law.

WHEREFORE, Jackman requests that this Court enter an order in its favor and against the Defendants, awarding it the full amount of the Assignment, plus interest, fees, costs of collection, and finding that the Defendants acted in bad faith, and awarding damages pursuant to O.C.G § 33-4-6.

Date: _April 15_, 2008

JACKMAN FINANCIAL CORP.

by: _____
One of Its Attorneys

Jessica Tovrov - 34966
TOVROV LAW OFFICES LLC
17 North State Street
Suite 1700
Chicago, IL 60602
Tel:  (312) 252-7362
Fax: (312) 264-0668

9

## VERIFICATION

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned

certifies that the factual statements set forth in this Complaint are true and correct.

JACKMAN FINANCIAL, CORP.

Joseph Brull

## RULE 222 AFFIDAVIT

The total amount of money damages sought in this complaint, exclusive of interest, costs

and attorneys fees is less than $50,000.

JACKMAN FINANCIAL, CORP.

Joseph Brull

From: Kiana Griffin 773-867-7840  To: Jessica Tovrov          Date: 2/7/2008 Time: 3:32:42 PM                Page 3 of 6

# Jackman Financial Corp.

## IRREVOCABLE INSURANCE PROCEEDS ASSIGNMENT

For value received and for their payment to **J. W. Jones Funeral Home** of the cost of funeral services, burial, or other disposition of the body of **LAMAR ANDERSON** (the insured), the undersigned hereby irrevocably assigns and transfers over to **Jackman Financial Corp.** the sum of **$11,451.30**, or so much thereof as is available from the proceeds of the following policies: # **C00415** of the **ANTHEM INSURANCE COMPANY** which may be or is due to the undersigned as beneficiary or by reason of any other qualification.

The undersigned hereby instruct the said Insurance Company to pay over solely to **Jackman Financial Corp.** the sum of $11,451.30, which payment shall constitute fully a release and certificate by me for such assigned and paid proceeds. If any portion of this amount is not paid by the Insurance Company, I (we) promise to pay any remaining balance to Jackman Financial Corp. its successors and assigns together with costs of collection including attorneys' fees.

Payments to Jackman Financial Corp. shall be delivered to 5220 S. Harper Ave. #112, Chicago IL 60615-4114

The undersigned hereby appoint Daniel G. Goldman as our attorney in fact to act for us with full power to verify beneficiary(ies), amounts assignable, and assignment terms and conditions. He may make collection of, compromise, settle, and endorse or receipt in our names or otherwise, any check, draft, authorization, receipt or release for the proceeds of said policy or policies, as fully and for all the same intents and purposes as we ourselves could do, hereby ratifying and confirming all that our said attorney may do or cause to be done by virtue hereof.

X _Katrina Short_____
Beneficiary: Katrina Short

Relationship: Mother

Address: 6916 Ballot Blvd; Columbus, GA. 31907

Soc. Sec #: 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

Date of Birth: 5-19-1970

Telephone: 706-341-0578

X _____
Beneficiary:

Relationship: _____

Address: _____

Soc. Sec #: _____

Date of Birth: _____

Telephone: _____

X _____
Beneficiary:

Relationship: _____

Address: _____

Soc. Sec #: _____

Date of Birth: _____

Telephone: _____

X _____
Beneficiary:

Relationship: _____

Address: _____

Soc. Sec #: _____

Date of Birth: _____

Telephone: _____

State of Georgia, County of Muscogee;

On this day, KATRINA SHORT appeared before me and, being first duly sworn, said that the above facts are true to the best of their knowledge and belief, and that the above assignment was executed as a voluntary act without constraint of any kind.

_12-4-07_____
Date

_____
Notary Public
My Commission Expires January 6, 2011

EXHIBIT
A

From: Kiana Griffin 773-667-7840 To: Jessica Tovrov
Date: 2/7/2008 Time: 3:32:42 PM
Page 5 of 6

Wire Transfer Entry Review                                                      Page 1 of 1

---

**Transfer Type:** Domestic Wire

Hamilton

**JACKMAN FINANCIAL CORP**                          **Accepted on:** Dec 06, 2007 at 12:43:54 PM

5000 S East End Ave Ste D10                          **Send Date:** Dec 06, 2007

**Debit Bank:** LNB - LaSalle Bank NA (LNB)          **Credit Bank:** 062001319 - COLONIAL BANK, NATIONAL ASSOCIATION

**Debit Account:** 5800416835 - Jackman Financial Corp   **Credit Account:** 8045070227 - J. W. Jones Funeral Home

2716 N. Lumpkin Rd.

Columbus

**Debit Currency:** USD - US Dollar                  **Credit Currency:** USD - US Dollar

**Debit Amount:** 10,935.99                          **Credit Amount:** 10,935.99

**Template ID:** Free Form - 1 Approvers

**Originator-to-Beneficiary:** inc 1 - Lamar Anderson

**Entry Cust/User:** JACKFINA - NICOLES              **Value Date:** Dec 06, 2007

**Entry Date/Time:** Dec 06, 2007 - 12:43:52 PM

---

Bank Trace #: 2007340002602                                         Cust Pending #: 004646

Add'l Approvers Required: 1

In order to submit a Money Transfer request on the account numbers described above, approval is required.
Please press the print button on your browser to generate a hard copy of this wire transfer request.

This transaction is subject to bank rules and regulations governing such electronic transactions as described in
our services agreement. Please keep these numbers handy in case you have any questions regarding this
transaction.

If any portion of the above is incorrect, or you have further questions, please contact customer service. Thank
You.



From: Kiana Griffin 773-667-7840 To: Jessica Tovrov    Date: 2/7/2008 Time: 3:32:42 PM

# Jackman Financial Corp.

5220 S Harper Ave Ste 112
Chicago Illinois 60615-4114
Phone: 866-851-7721
Fax:773-667-7840

December 26, 2007

Claims
Anthem Life Insurance
P.O. BOX 182361
Columbus OH 43218

Re:    Deceased:        **LAMAR ANDERSON**

Policy No.:        **C00415**

Social Sec. No.:    **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**

Dear Sir or Madam:

As the assignee of Katrina Short, we submit herewith the following documents to support a death benefit claim for $ 11,451.30 on the life of the above-referenced decedent:

    (X) Assignment
    (X) Claimant's Statement
    (X) Certified Death Certificate

Any items required to process this claim which are not enclosed will be sent as they are received. If you have any questions or if any of the above items are not received please call the undersigned immediately.

**Payment should be made to:**

**Jackman Financial Corp.**
**5220 S Harper Ave Ste 112**
**Chicago IL 60615-4114**

Sincerely,

Cristina T. Pirvulescu



From: Klans Griffin 773-667-7840 To: Jessica Tovrov                    Date: 2/7/2008 Time: 3:32:42 PM                    Page 8 of 8

CERTIFICATE OF DEATH STATE OF GEORGIA     110-91-69003     02019

| DECEDENT'S NAME (First, Middle, Last) | | SEX | DATE OF DEATH (Mo., Day, Year) |
|---|---|---|---|
| Lamar  Anderson | | Male | 12-2-2007 |

| RACE | ORIGIN OF DECEDENT | DATE OF BIRTH | AGE | UNDER 1 YEAR | UNDER 1 DAY | COUNTY OF DEATH |
|---|---|---|---|---|---|---|
| Black | American | 8-7-1991 | 16 | | | Muscogee |

CITY/TOWN or LOCATION OF DEATH: Columbus     HOSPITAL OR OTHER INSTITUTION: Corner of Miller Rd. and Bridgewater Rd.

| STATE AND COUNTY OF BIRTH | SPOUSE |
|---|---|
| GA: Muscogee     USA | Never Married |

SOCIAL SECURITY NUMBER: 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     Student     In Schools

| RESIDENCE - STATE | COUNTY | CITY, TOWN or LOCATION | STREET AND NUMBER AND ZIP CODE | INSIDE CITY LIMITS |
|---|---|---|---|---|
| Georgia | Muscogee | Columbus | Buller Blvd. 31907  6916 | Yes |

FATHER'S NAME: Lamar     Anderson     MOTHER'S MAIDEN NAME: Katrina     Colbert

INFORMANT'S NAME: Katrina     Short     6916 Bullet Blvd. Columbus, GA 31907     Mother

| METHOD OF DISPOSITION | DATE | PLACE OF DISPOSITION | LOCATION |
|---|---|---|---|
| Burial | 12-8-2007 | Green Acres Cemetery | Columbus, GA 31907 |

FUNERAL DIRECTOR: John L Wright     3804     J.W. Jones Funeral Home Inc. 2716 North Lumpkin Rd. Columbus, GA 31903     1651

CAUSE OF DEATH: Multiple Blunt Injuries

| PART II OTHER SIGNIFICANT CONDITIONS | AUTOPSY | AUTOPSY FINDINGS |
|---|---|---|
| | Yes | Yes |

| MANNER OF DEATH | DATE OF INJURY | DESCRIBE HOW INJURY OCCURRED | HOUR OF INJURY |
|---|---|---|---|
| Accident | December 02, 2007 | Struck By Moving Vehicle | Unknown |

INJURY AT WORK: No     PLACE OF INJURY: Street     LOCATION: Miller Road / Bridgewater Road (Muscogee County)

CERTIFIER: December 07, 2007     3:35 AM     December 02, 2007     3:35 AM

NAME, TITLE, AND LICENSE NO. OF CERTIFIER: William T. Thurman Jr Coroner     4510 30th Street, Columbus GA 31900     DEC 1 0 2007

CERTIFICATE OF RECORD

This is an exact copy of the death certificate received for filing in Muscogee County, Georgia

Local Custodian                    Office of Local Custodian

County MUSCOGEE                    Date DEC 1 0 2007

From: Kiana Griffin 773-667-7840 To: Jessica Tovrov        Date: 2/7/2008 Time: 3:33:42 PM        Page 4 of 6

Page 2 of 4

# Statement of Death
# Group Claim Form

By furnishing this form and investigating
the claim, Anthem Life shall not be held to
admit the validity of any claim or to waive
the breach of any condition of the policy.

# Anthem Life

Anthem Life Insurance Company
Claims Center
P.O. Box 182361
Columbus, OH 43218-2361
800-813-5682 • 614-433-8861 fax

## CLAIMANT'S STATEMENT

| 1. Name of Deceased | 2. Is Deceased the ☐ Primary Insured or |
|---|---|
| *Lamar Anderson* | ☑ A Dependent? |

| 3. Name of Primary Insured *(if not the deceased)* | 4. Primary Insured's Social Security Number |
|---|---|
| *Katrina Short* | *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* |

| 5. Deceased's Date of Birth | 6. Date of Death | 7. Exact Date the Primary Insured Last Worked |
|---|---|---|
| *8-7-1991* | *12-2-2007* | *11-30-07* |

8. If not actively at work on the date of death, give reason why Primary Insured was not working.

### IMPORTANT - CLAIMANT, PLEASE READ, DATE AND SIGN BELOW

I certify that the above statements are true, complete and correct to the best of my knowledge. I authorize any Hospital, Physician, Pharmacy, Insurance Company, Employer, Consumer Reporting Agency or Organization to furnish Anthem Life, or its representative, any information, medical and non-medical, including, but not limited to information with respect to any illness or accident, medical history or copies of hospital, medical, personnel or credit records. A photocopy of this authorization shall be considered as valid as the original.

I further certify, under penalty of perjury, that the Social Security Number (or Taxpayer Identification Number) and Claimant's Backup Withholding status information below are correct. I understand that Anthem Life makes payment of proceeds of $10,000 or more by sending me a checkbook that accesses an interest bearing account, unless I notify Anthem Life to do otherwise. I also understand that my signature may be used for signature verification purposes.

| 9. Signature of Beneficiary | 10. Date | 11. Telephone Number |
|---|---|---|
| *Katrina D. Short* | *12-4-07* | *(706) 888-1795* |

| 12. Type or print Name of Beneficiary | 13. Date of Birth | 14. Your Relationship to Deceased |
|---|---|---|
| *Katrina Short* | *5-19-1970* | *Mother* |

| 15. Social Security Number *(for estate, trust, etc. give EIN)* | BACKUP WITHHOLDING STATUS: I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of failure to report all interest or dividends, or I am exempt. *Cross out this statement if you have been so notified.* |
|---|---|
| *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* | |

| 16. Beneficiary's complete address | Street or Box | City | State | Zip |
|---|---|---|---|---|
| | *6916 Bullet Blvd A-10* | *Columbus* | *Ga.* | *31907* |

### The laws of some states require us to provide you with the following information:

Any person knowingly, and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information, is guilty of a felony, and may be subject to imprisonment, fines, and civil damages.

California: For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

Colorado: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

Florida: Any person who knowingly, and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

Kentucky: Any person who knowingly, and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent act, which is a crime.

New Jersey: Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

New York: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars, and the stated value of the claim for each such violation.

Pennsylvania: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Z AA LIFE AA 0111                    Employer: Please complete reverse side of form in full.

# TOVROV LAW OFFICES

17 NORTH STATE STREET
SUITE 1700
CHICAGO, ILLINOIS 60602
JESSICA@TOVROVLAW.COM

JESSICA TOVROV

TELEPHONE (312) 252-7362
FACSIMILE (312) 264-0688

February 12, 2008

VIA FEDERAL EXPRESS

Claims
Anthem Life Insurance
6740 North High Street
Suite 200
Worthington OH  43085-7500

　　　　Policy No.:　C00416
　　　　Deceased:　　LaMar Anderson

　　　　This firm represents Jackman Financial Corp. in regard to its claims on the above policy.

　　　　Jackman Financial is a third-party funder that advances funds to pay funeral costs, taking as payment an assignment of proceeds of the deceased's life insurance.  As I am sure you know, this is a very common practice, especially with small-face policies sold as burial insurance.

　　　　Your insured, LaMar Anderson, died on December 2, 2007, in Columbus Georgia.  J.W. Jones Funeral Home, one of Jackman's regular clients, arranged for Jackman to advance funds for the funeral. Following its usual practice, Jackman contacted Anthem to verify certain basic information, and was told to deal directly with Anthem's TPA, HR Solutions. On a three-way call with the funeral director and a representative from HR, Jackman's Kiana Griffin obtained the necessary verification. Accordingly, Jackman advanced the requested funds, and the deceased's mother and beneficiary, Katrina Short, executed the assignment form.

　　　　Immediately after advancing the funds, Jackman advised HR of the fact. Later, when Jackman received all the necessary documents from the funeral home, she again called HR to ascertain submission procedures. HR, however, said it would only provide information to the beneficiary.  Despite several attempts on Jackman's part to explain the situation, HR was intransigent.  On December 26, Cristina Pivulescu of Jackman sent the necessary documents



directly to Anthem.  Anthem then informed Jackman that the full amount had been paid to Ms. Short.

From the date it provided the verification information, HR, Anthem's agent, was on notice that the proceeds had been assigned to Jackman. Nonetheless, it frustrated Jackman's attempts to comply with the submission procedures, and ultimately paid the wrong party.  This is unacceptable, in violation of Georgia law, and a breach of fiduciary duty.

Jackman intends to do whatever is required to collect the amount due. The face amount of the assignment was $11,451.30. No later than February 29, 2008, please forward a check payable to **Jackman Financial Corp.** in the assigned amount, plus interest per Georgia law, plus reinvestment loss, plus $300 collection fee.  By my calculation, as of February 12, this comes to **$13,371.81**.

I have enclosed copies of:

- The assignment,
- Death certificate,
- Proof of Jackman's payment to the funeral home,
- Claimant's statement,
- Jackman's December 26 letter to Anthem.

You may rest assured, that upon receiving proper payment, Jackman will do everything reasonable to assist Anthem in collecting from Ms. Short.

Very truly yours,

Jessica Tovrov

enc.

cc: J.W. Jones Funeral Home, w/o enclosures
      Daniel Goldman, w/o enclosures

# facsimile

Anthem Life Insurance Company
P. O. Box 182361
Columbus, OH 43218-2361
Tel 800-813-5682
Fax 614-433-8861

*Privileged and Confidential Communication*

Follow-up
2/18/08
May we hear from
you soon? thank you!

**Anthem**Life

| To: | | Number of pages (including cover): |
|---|---|---|
| JESSICA TOVROV | | 1 |
| Company/Department: | | Date: |
| TOVROV LAW OFFICES | | 2/14/08 |
| From: | | Fax number calling: |
| Earl J. Miller, Life Claims Team Lead | | (312) 264-0688 |
| Telephone:<br>800-813-5682, ext. 38840   or 614-433-8840 | | Reference: |
| E-mail:  Earl.Miller@Anthem.com | | Lamar Anderson -- Life Insurance Claim |

Remarks:

Ms. Tovrov:

We have received your letter of February 12, indicating that you represent Jackman Financial Corporation.

To assist us in reviewing the situation, will you please respond to the following:

- Has any attempt been made by either Jackman or you to contact the beneficiary, Katrina Short?  If so, what were the results?

- Please provide a specific breakdown of how you arrived at the demanded amount of $13,371.81.

We look forward to receiving your response.

*Earl Miller*

*The information contained in this facsimile message, and in any accompanying documents, is confidential information that belongs to Anthem Life. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient of this information, you are hereby notified that any disclosure, copying or distribution of this information, or the taking of any action in reliance on this information, is strictly prohibited. If you have received this facsimile message in error, please immediately notify the sender by telephone to arrange for its return at our expense. Thank you.*

(102)



# WELLPOINT.

120 Monument Circle
IN0102-B371
Indianapolis, IN 46204-4903
Tel (317) 488-6854
Fax (317) 488-6887
email sarah.nemecek@wellpoint.com

**Sarah Nemecek**
Senior Executive Counsel
Legal Department

February 26, 2008

Jessica Tovrov
Tovrov Law Offices
17 North State Street
Suite 1700
Chicago, IL 60602

Re:  **Your Client Jackman Financial Corp.
      WellPoint Associate Katrina Short**

Dear Ms. Tovrov:

This letter confirms our telephone conversation of this morning in which I advised that Anthem Life Insurance Company and its parent company WellPoint, Inc. find no basis for liability to Jackman Financial Corp. with respect to the claim stated in your letter of February 12, 2008 to Anthem Life Insurance Company.

Please direct any further communications regarding this matter to myself or to Jami Meister. Written correspondence may be sent to either of us by facsimile to 317 488 6887 or to our attention at:

WellPoint, Inc.
Legal Department
120 Monument Circle
Indianapolis IN 46204

My direct telephone number is 317 488 6854; Ms. Meister's is 317 488 6277.

Yours truly,

Sarah Nemecek

# TOVROV LAW OFFICES

17 NORTH STATE STREET
SUITE 1700
CHICAGO, ILLINOIS 60602
JESSICA@TOVROVLAW.COM

JESSICA TOVROV

TELEPHONE (312) 252-7362
FACSIMILE (312) 264-0688

February 29, 2008

VIA FACSIMILE  317.488.6887
and FIRST CLASS MAIL

Sarah Nemecek
Jami Meister
WellPoint, Inc.
Legal Department
120 Monument Circle
Indianapolis, IN  46204

> Re:     Anthem Policy:  C00416
>          <u>Deceased:  LaMar Anderson</u>

As you know, on behalf of my client, Jackman Financial Corp., on February 12, I wrote to the Anthem Claims Office asserting its claim to the proceeds of this policy.  That letter set out, in some detail, the basis for Jackman's claim, and included relevant documents.  A copy of that letter, without enclosures, is attached.

I received a letter in response from Ms. Nemecek, dated February 26, stating simply that Anthem "finds no basis for liability to Jackman".  This "explanation" is hardly adequate, and it is difficult to understand how it took two weeks to write.

In light of the explanation and documents provided in my letter of February 12, simple professional courtesy would suggest that Anthem provide an explanation, rather than a naked denial.  Further, my client has no wish to expend funds on a legal wild goose chase, and in the event that Anthem's position is correct, we will drop the matter.  Ms. Nemecek's February 26 letter provides no assistance in that regard.

I have left voicemails for both of you, but have not received a return call.  I request that at your earliest convenience, either by letter or by phone, you

address the substantive points of my letter.  In return, in the event that Anthem provides a compelling reason for denial of our claim, we will not pursue the matter further.


                                        Very truly yours,


                                        Jessica Tovrov


enc.

cc:  Daniel Goldman w/o enc.

# TOVROV LAW OFFICES

17 NORTH STATE STREET
SUITE 1700
CHICAGO, ILLINOIS 60602
JESSICA@TOVROVLAW.COM

JESSICA TOVROV

TELEPHONE (312) 252-7362
FACSIMILE (312) 264-0688

March 5, 2008

VIA FEDERAL EXPRESS

Cheryl Hefner
Head of Claims
Claims Department
Anthem Life Insurance
6740 North High Street, Ste 200
Worthington, OH  43085

Re:    Anthem Policy:  C00416
       <u>Deceased:  LaMar Anderson</u>

Dear Ms. Hefner,

This firm represents Jackman Financial Corp., assignee of benefits under the above-listed policy.

On February 12, I wrote to the Anthem Claims Office asserting Jackman's claim, and explaining its basis.  In response, I received a letter from Sarah Nemecek of WellPoint, dated February 26, denying the claim without explanation. On February 29, I wrote once more, requesting an explanation of the denial.  Ms. Nemecek called on March 4, and before unilaterally terminating the conversation, said that Anthem would not cover the claim, would not provide an explanation, and that our recourse was to file suit.

In my many years of practice, representing both insurers and insureds, this is the first time I have encountered an insurer refusing to provide any explanation for a denial, and proposing litigation as an alternative.  In the event

that Jackman ultimately prevails, WellPoint and Anthem's practices give rise to strong claims for bad faith. See Georgia Statute § 33-4-6[1].

We would still prefer to resolve this matter without resort to the courts. However, if I do not hear from Anthem by close of business March 11, we will proceed with litigation.

I enclose copies of the correspondence to which I refer, without their attachments.

Very truly yours,

Jessica Tovrov

enc.

cc: Sarah Nemecek  w/o enc.
    Daniel Goldman  w/o enc.

---

[1] The deceased was a resident of the State of Georgia, and Georgia law controls.



**WELLPOINT**

120 Monument Circle
IN0102-B371
Indianapolis, IN 46204-4903
Tel (317) 488-6854
Fax (317) 488-6887
email sarah.nemecek@wellpoint.com

Sarah Nemecek
Senior Executive Counsel
Legal Department

March 6, 2008


Jessica Tovrov
Tovrov Law Offices
17 North State Street
Suite 1700
Chicago IL  60602

Re:    Your Client Jackman Financial Corp.
       WellPoint Associate Katrina Short

Dear Ms. Tovrov:

Your letter of March 5, 2008 to Cheryl Hefner at Anthem Life Insurance Company has been
forwarded to me for reply.  As I previously advised, I represent WellPoint with respect to its
employee benefit plans and also its subsidiary Anthem Life Insurance Company with respect to
its provision of life insurance benefits for WellPoint employees.

As I previously requested and as required by rules of attorney conduct, please direct your further
communications regarding this matter solely to myself or to our paralegal Jami Meister.  As
previously noted, written correspondence may be sent to either of us by facsimile to 317 488
6887 or to our attention at:

                    WellPoint, Inc.
                    Legal Department
                    120 Monument Circle
                    Indianapolis IN  46204

In response to the assertions of bad faith in your March 5 letter, you are correct that I declined to
reply to your requests for admissions and legal conclusions in our telephone call.  Additionally,
when you persisted in interrupting and making demands after I had declined to engage in
argument, I stated the call was no longer productive and disengaged.  That was not bad faith
conduct.

Our position, as I have previously stated, is that your client has no cognizable claim against
Anthem Life Insurance Company or WellPoint with respect to the life insurance benefits that
were paid to our associate Katrina Short.  Though it seems you do not recall it, I did explain
during our initial telephone conversation that the funeral home which you have characterized as
your client's client was advised by WellPoint's HRSolutions department to coordinate with the
beneficiary to submit an assignment of benefits form along with her claim form.  Our records

reflect that this did not occur.  The beneficiary's claim form was received and processed prior to receipt of an assignment of benefits form.  These facts do not support a remedy against Anthem Life Insurance Company or WellPoint for your client or the funeral home.

Ms. Tovrov, if you have additional information that you wish WellPoint and/or Anthem Life to consider with respect to this matter, please do send it to me or to Ms. Meister.  While WellPoint and Anthem Life Insurance Company do not welcome litigation, a threat of litigation without factual or legal basis will not cause us to engage in nonproductive discourse.

Yours truly,

Sarah Nemecek

# TOVROV LAW OFFICES

17 NORTH STATE STREET
SUITE 1700
CHICAGO, ILLINOIS 60602
JESSICA@TOVROVLAW.COM

JESSICA TOVROV

TELEPHONE (312) 252-7362
FACSIMILE (312) 264-0688

April 3, 2008

FIRST CLASS MAIL

Sarah Nemecek
WellPoint, Inc.
Legal Department
120 Monument Circle
Indianapolis, IN  46204

      Re:   Anthem Policy:  C00416
              <u>Deceased: LaMar Anderson</u>

      Enclosed is a draft complaint complaining of Anthem and WellPoint.

      We would still prefer to avoid litigation, and hope that your client will reconsider its position.  However, if I do not hear from you by April 11, we will have no choice but to file the complaint.

      Very truly yours,

Jessica Tovrov

enc.

cc:   Daniel Goldman

# EXHIBIT 2



# Anthem Life

## Certificate of Coverage

*Feel confident knowing your most precious assets are protected by Anthem Life.*



anthem.com

Life and disability products are underwritten by Anthem Life Insurance Company.
AL-9006 (8/04)

# Introduction

This Certificate is issued according to the terms of the Group Policy but is not a part of the Group Policy. It describes the insurance provided to you, the Certificateholder, under the Group Policy, which is an agreement between Anthem Life Insurance Company (called we, our, us) and the Policyholder. In the event of a difference between this Certificate and the Group Policy, the terms of the Group Policy will prevail.

The Policyholder's name appears on the Certificate cover. The policyholder pays the premium for the insurance. (The Policyholder may require you to contribute toward the premium for your coverage.)

Subject to the payment of premiums, all persons who have:

- satisfied the eligibility conditions
- applied for coverage; and
- been approved by us,

are covered by the Group Policy. Such persons are called Covered Persons.

All periods of time under this Certificate will begin and end at 12:00 midnight at the beginning of the day at the Group's address.

None of our agents or employees can legally change this Certificate or waive any of its provisions. Any change must be approved by one of our executive officers in a rider, endorsement, or amendment.

This Certificate replaces any Certificate previously issued to you under the Group Policy.

**ANTHEM LIFE INSURANCE COMPANY**
**Main Administrative Office:  P.O. Box 182361**
**Columbus, Ohio 43218-2361**

Joan Herman, President

1    eff 01/01/2007

# TABLE OF CONTENTS

**Introduction** ...................................................................................................1

**Schedule of Benefits** ........................................................................3
    Group Term Life Insurance ............................................................................3
    Waiver of Premium for Group Term Life Insurance ........................................3
    Group Accidental Death and Dismemberment Insurance ..............................4
    Group Term Life Insurance for Dependents ..................................................4
    Continuation of Coverage ............................................................................5

**How and When Coverage Starts** ...............................................6
    Eligibility ...................................................................................................6
    Application ..................................................................................................6
    When Coverage Starts ................................................................................6
    Delayed Effective Date ................................................................................6

**Group Coverage Provisions** ......................................................8
    Group Term Life Insurance ............................................................................8
    Living Benefit .............................................................................................8
    Waiver of Premium for Group Term Life Insurance ......................................10
    Group Accidental Death and Dismemberment Insurance ............................11
    Group Term Life Insurance for Dependents ................................................13

**How and When Coverage Stops** ..............................................14
    Termination of Coverage ............................................................................14
    Continuation of Coverage ..........................................................................14
    Conversion Privilege ..................................................................................14

**General Provisions** ......................................................................16
    Claims ......................................................................................................16
    Beneficiary ................................................................................................17
    Misstatements ...........................................................................................18

**Definitions** ....................................................................................19

eff 01/01/2007

# Schedule of Benefits

This schedule is a part of the Certificate. It provides limited information about coverage. Read the Certificate carefully for further information.

**Class 01 Definition:** Eligible Associates scheduled to work at least 20 hours each week.

## Group Term Life Insurance

**Amount:**                Choice of one of the following:*
                              $50,000;*
                              1 x Annual Earnings;**
                              2 x Annual Earnings;**
                              3 x Annual Earnings;**
                              4 x Annual Earnings;**
                              5 x Annual Earnings;**
                              6 x Annual Earnings;**
                              7 x Annual Earnings.**

\*     If no choice is made when allowed, the default amount of coverage is $50,000.
\*\*   Annual Earnings are first rounded up to the nearest $1,000 (if not already an even multiple thereof), and then multiplied. The minimum benefit amount is $50,000, and the maximum benefit amount is $1,000,000.

Annual Earnings means the Certificateholder's annual base wage or salary from the Group as of last August 31, including any commissions earned during the 12 months prior to last August 31. However, if the Certificateholder was not an Eligible Person as of last August 31, Annual Earnings means the Certificateholder's annual base wage or salary on the date the Certificateholder became an Eligible Person, including any commissions he/she earned from the Group during the 12 months prior to becoming eligible.

## Waiver of Premium for Group Term Life Insurance

Total Disability must begin before age 60.

Waiting period:                6 months

Waiver of Premium will end when the Certificateholder reaches the earlier of: age 65, or his/her date of retirement.

Refer to the "Waiver of Premium for Group Term Life Insurance" section for other reasons Waiver of Premium may end.

eff 01/01/2007

## Group Accidental Death and Dismemberment Insurance

**Principal Sum:**                    Equal to the amount of Group Term Life
                                      Insurance in force.

Coverage is 24-hour.


## Group Term Life Insurance for Dependents

Group Term Life Insurance for Dependents is optional.  The Certificateholder can waive
coverage or elect to insure either the spouse only, children only, or all Dependents (spouse
and children) at one of the applicable benefit amounts shown following.  This insurance
applies to a Certificateholder only if the Certificateholder applied for and is paying the
required premium contribution for this coverage.

| Spouse or Domestic Partner Amount – Choice of one of the following, subject to a benefit maximum described below: |
|---|
| Waive coverage. |
| $10,000; |
| $15,000; |
| $25,000; |
| 1 x Annual Earnings |

| Child Amount – Choice of one of the following, subject to a benefit maximum described below: |
|---|
| Waive coverage |
| $500 from live birth until age 15 days, $ 2,500 from age 15 days until age 6 months, and $5,000 on and after age 6 months |
| $1,000 from live birth until age 15 days, $5,000 on age 15 days until age 6 months, and $10,000 on and after age 6 months |
| $2,500 from live birth until age 15 days, $12,500 on age 15 days until age 6 months, and $25,000 on and after age 6 months |

Annual Earnings has the same meaning as in Group Term Life Insurance coverage for the
employee.  Any specified dollar amount elected for spouse or child must be no more than
50% of the Certificateholder's Group Term Life Insurance amount in force.  If 1 x Annual
Earnings is elected for the spouse, Annual Earnings is rounded up to the nearest $1,000, if
not already an even multiple thereof, and is subject to a benefit maximum equal to 50% of
the  Certificateholder's Group Term Life Insurance amount in force, or $125,000, whichever
is less.

The Dependent child age limit is the end of the calendar year in which the child attains age
19.  This age is extended to the end of the calendar year in which the child attains age 25 if
the child is a full-time student.

eff 01/01/2007

These child age limits do not apply to children of any age who are not self-supporting because of mental or physical disability and who depend on the Certificateholder for care and support. Proof that the child meets the above conditions must be provided within 120 days after the date the child's coverage would otherwise end. Thereafter, proof that these conditions remain must be given when we request it; however, we will not ask for such proof more than once a year.

## Continuation of Coverage

Coverage may be continued beyond the date it would otherwise end up to the time period(s) shown below. All continued coverage is subject to the provisions stated in the section entitled "How and When Coverage Stops."

- If the Certificateholder is no longer Actively-at-Work due to a leave of absence, Group Life Insurance and Accidental Death and Dismemberment Insurance may be continued as long as the leave is authorized by the Group for up to 12 months.
- If the Certificateholder is no longer Actively-at-Work due to disability, Group Life Insurance and Accidental Death and Dismemberment Insurance may be continued for up to 6 consecutive months.

eff 01/01/2007

# How and When Coverage Starts

## Eligibility

Eligibility under the Group Policy is limited to Eligible Persons and Dependents. Eligible Person and Dependent are defined in the "Definitions" section.

## Application

To enroll for coverage, an application must be submitted to us.

If the application is received more than 31 days after an Eligible Person or Dependent becomes eligible, the Eligible Person or Dependent will not be enrolled until the Eligible Person provides Evidence of Insurability which is satisfactory to us. In no event will we require Evidence of Insurability for a newborn child if:

- birth occurs while Dependent coverage is in effect; or
- application for the child is received within 90 days following birth.

## When Coverage Starts

Coverage starts on the Effective Date. Except as described in the "Delayed Effective Date" section, the Effective Date is as follows:

- an Eligible Person's coverage will start on the first day of the period for which premium is paid following the date the person becomes an Eligible Person, unless otherwise approved by us;
- a Dependent's coverage will start on the day the person becomes an eligible Dependent; and
- Generally, a change in amount of insurance for an Eligible Person or Dependent will become effective on the first day of the period for which premium is paid following the date of the event causing the change.

## Delayed Effective Date

Coverage may be delayed beyond the date it would otherwise start if:

- Evidence of Insurability is required. In this event, the Effective Date will be determined in accordance with our underwriting rules and regulations; or
- an Eligible Person is not Actively-at-Work on the day preceding the day coverage, including an increase in an amount of insurance, would otherwise become effective. In this event, coverage for the Eligible Person will become effective on the day the eligible Person returns to Active Work; or

eff 01/01/2007

- a Dependent is confined in a health care facility on the day preceding the day coverage, including an increase in an amount of insurance, would otherwise become effective.  In this event, coverage for the Dependent will become effective when there has been a lapse of three consecutive days during which the Dependent has not been an inpatient.  In no event will coverage for a Dependent start:

  - Before the Eligible Person's coverage starts; and
  - For a newborn child, before the child reaches any minimum age stated in the "Group Term Life Insurance for Dependents" section in the **Schedule of Benefits**.

eff 01/01/2007

## Group Coverage Provisions

**Some of the coverages described in this section may not be available to a Certificateholder under the Group's Plan. Each Certificateholder's Schedule of Benefits states which coverages are available to the Certificateholder.**

## Group Term Life Insurance

In the event of the Certificateholder's death while insured for this Group Term Life Insurance, we will pay to the Beneficiary the Group Term Life Insurance amount stated in the **Schedule of Benefits**.

We will pay the benefit after we receive notice and proof of death.

The benefit will be paid in one sum unless, prior to payment, an alternate settlement option is requested by the Certificateholder or the Beneficiary. A description of settlement options is available on request. Refer to the "General Provisions" section for Beneficiary information.

### Living Benefit (Accelerated Benefit)

If the Certificateholder is diagnosed as terminally ill or otherwise meets the requirements stated below, as defined in these provisions, the Certificateholder may elect to receive an accelerated payment of a portion of the Group Term Life Insurance benefit. This accelerated payment is called the Living Benefit. The Living Benefit is equal to 50% of the employee's Group Term Life Insurance amount, subject to a maximum of $100,000.

The benefit will be calculated as of the date we receive the Certificateholder's election. Any Group Term Life Insurance for Dependents is not included in the calculation. The Living Benefit will be paid in one sum. There is no waiting period for the Living Benefit.

After the Living Benefit is paid, the Certificateholder's Group Term Life Insurance amount which remains in force will be equal to the amount which would otherwise apply, reduced by the Living Benefit payment. The maximum amount of Group Term Life Insurance that may be converted according to the Conversion Privilege will be reduced to the amount remaining in force following the Living Benefit payment.

The Certificateholder's Group Accidental Death and Dismemberment Insurance, if any, will not be affected by payment of the Living Benefit.

Payment of the Living Benefit discharges us of all liability under the Group Policy and Certificate to the extent of the payment.

eff 01/01/2007

**Disclosure**

**The Living Benefit may be taxable.  As with all tax matters, the Certificateholder should consult a personal tax advisor to determine tax consequences prior to making an election.**

**This Living Benefit MAY affect the Certificateholder's ability to receive certain government benefits or entitlements, such as Medicaid, because the Living Benefit MAY be considered an asset in determining eligibility.  Because this Living Benefit is a part of this Certificate, the Certificateholder may be required to receive and spend all of the available funds from the Certificate prior to becoming eligible for government assistance programs.**

**The Certificateholder's Group Term Life insurance death benefit will be reduced if the Living Benefit is paid.**

**Conditions**

The Living Benefit election must be made in writing on a form which satisfies us.

To qualify for this benefit, the Certificateholder must provide evidence satisfactory to us that he/she is terminally ill.  This means that the Certificateholder's life expectancy is twelve (12) months or less. The evidence must include a certification by a licensed physician. We may require, at our expense, an additional examination by a physician that we choose.  Final determination of eligibility will be made by us.

In addition, payment of the Living Benefit is subject to the following conditions:

- the Group Policy, and the Certificateholder's Group Term Life Insurance under the Group Policy, must be in force on the date we receive the election;
- in the event the Group Policy ends before we pay the Living Benefit, we will reduce the Living Benefit by any amount of Group Term Life Insurance for which the Certificateholder is covered under a new group policy;
- in the event the Certificateholder dies after electing the Living Benefit but before we pay the benefit, we will pay the Group Term Life Insurance benefit as if the election had not been made, provided we receive notice of death before we pay the Living Benefit;
- any irrevocable Beneficiary must agree in writing to the Living Benefit election on a form that satisfies us;
- in community property states we may require the spouse's written consent before the Living Benefit is paid;
- if the Living Benefit election is forced by creditors, or government agencies, we will honor it only to the extent required by law; and
- a Certificateholder may receive the Living Benefit only once.

eff 01/01/2007

**Exceptions**

We will not pay the Living Benefit if:

- the Certificateholder has assigned his/her Group Term Life Insurance benefit;
- all or a portion of the Certificateholder's Group Term Life Insurance is to be paid to a former spouse as a part of a divorce or dissolution agreement; or
- the terminal illness is due to an intentionally self-inflicted injury or suicide attempt.

## Waiver of Premium For Group Term Life Insurance

If the Certificateholder becomes Totally Disabled, only Group Term Life Insurance may be continued with no further premium payment. In order for insurance to be continued with waiver of premium we must receive proof satisfactory to us that the Certificateholder is Totally Disabled. In addition, the Total Disability must:

- begin while:
  - the Certificateholder is employed by the Group;
  - the Certificateholder is insured for Group Term Life Insurance; and
  - the Group Policy, and the Group's coverage under the Group Policy, is in force.
- begin before the Certificateholder reaches the age stated in the **Schedule of Benefits**;
- be continuous from the date of Total Disability to the end of the waiver of premium waiting period stated in the **Schedule of Benefits**, during which all required premiums must be paid; and
- not be due to an intentionally self-inflicted injury.

Total Disability or Totally Disabled means a condition which, as certified by a physician:

- is due to an illness or injury; and
- prevents the Certificateholder from performing the material and substantial duties of any occupation for wage or profit.

Subject to all conditions stated above, waiver of premium will begin immediately following the end of the waiver of premium waiting period.

Proof of Total Disability must be provided to us within one year after the Total Disability begins to assure this insurance is continued. If death occurs before we receive proof of Total Disability, we will pay the Group Term Life Insurance benefit if:

- death occurs within the one-year period; and
- we receive proof that Total Disability was continuous from the date of Total Disability to the date of death.

Proof of continued Total Disability must be provided when requested. We have the right to have the Certificateholder examined at our expense whenever reasonably necessary, but no more than once a year after two years of Total Disability.

eff 01/01/2007

The continued Group Term Life Insurance will be subject to any benefit reductions stated in the **Schedule of Benefits** for Group Term Life Insurance. Waiver of premium for Group Term Life Insurance does not include any coverage for Group Accidental Death and Dismemberment Insurance.

Continuance of Group Term Life Insurance with waiver of premium will end on the first of the following to occur:

- the date Total Disability ends;
- the date proof of Total Disability is not provided when required;
- the date the Certificateholder refuses to be examined when required; or
- any date stated in the **Schedule of Benefits** for termination of waiver of premium.

Termination of the Group Policy, or the Group's coverage under the Group Policy, will not affect any continuance of Group Term Life Insurance with waiver of premium for which the Certificateholder qualified before the Group Policy ended, or the Group's coverage under the Group Policy ended.

If the Certificateholder returns to work and is an Eligible Person on the date waiver of premium ends, Group Term Life Insurance will be continued subject to payment of the required premium.

If the Certificateholder is not an Eligible Person on the date waiver of premium ends, Group Term Life Insurance will end. Group Term Life Insurance may them be converted to individual life insurance. For further information, refer to the provision entitled "Conversion Privilege."

If the conversion privilege is exercised, and it is later determined that the Certificateholder qualifies for waiver of premium for Group Term Life insurance, the individual policy may be returned to us with a request for continuance of Group Term Life Insurance with waiver of premium. Under these circumstances, insurance will be continued during the Total Disability according to all conditions stated here. We will refund any premiums paid for the individual policy. We will consider the Beneficiary to be the same as the one in effect under the individual policy, unless otherwise requested.

## Group Accidental Death and Dismemberment Insurance

If a Certificateholder dies or loses a body member within 180 days of an Accident, we will pay the amount for the loss stated in the table below, provided:

- the Accident occurs while the Certificateholder is insured for this Group Accidental Death and Dismemberment Insurance; and
- the loss is a result of the Accident and not any other cause.

An Accident means the unforeseen consequences of a deliberate or involuntary act.

eff 01/01/2007

We will pay benefits for any loss, other than life, to the Certificateholder. We will pay the benefit for loss of life to the same Beneficiary who is to receive life insurance benefits. Refer to the "General Provisions" section for Beneficiary information.

| Table of Losses And Benefits | |
| --- | --- |
| **Loss** | **Benefit** |
| Loss of Life | Principal Sum |
| Loss of Two Members | Principal Sum |
| Loss of One Member | One-half the Principal Sum |

The principal sum is shown in the **Schedule of Benefits**.

The total amount of benefits for two or more losses resulting from the same Accident will be limited to the principal sum.

In the table, "loss of member" means loss of a hand or foot or loss of an eye. "Loss of a hand or foot" means a hand or foot is separated at or above the wrist or ankle joint. "Loss of an eye" means total and irrecoverable loss of sight in one eye.

**Seat Belt Benefit**

If the Certificateholder dies as a result of a motor vehicle Accident for which the accidental death benefit is payable, we will pay this additional benefit to the Beneficiary if, at the time of the Accident, the Certificateholder is:

- driving or is a passenger in any private passenger motor vehicle designed for use on public roads; and
- wearing an original equipped factory installed or manufacturer-authorized and unaltered seat belt or lap and shoulder restraint approved by the National Highway Traffic Safety Administration.

This additional benefit will be equal to 10% of the Principal Sum or $15,000, whichever is less.

A police report of the Accident will be required to determine whether a properly installed seat belt or lap and shoulder restraint was in use.

We will not pay this Seat Belt Benefit if the Certificateholder is the driver of the private motor vehicle and does not hold a current and valid driver's license at the time of the Accident.

**Non-covered Losses**

We will not pay accidental death and dismemberment benefits for a loss caused by or connected with any of the following:

eff 01/01/2007

- suicide or self-inflicted injury committed or inflicted while sane or insane (in Missouri, while sane);
- disease, illness, physical or mental impairment, medical or surgical treatment, diagnostic or preventive care (unless such treatment or care is provided in connection with an accidental injury), or infection (except infection of an accidentally caused wound);
- taking any drug or chemical unless taken as prescribed by a physician or as directed by the pharmaceutical manufacturer;
- auto-erotic asphyxiation;
- taking part in, committing, or attempting to commit an assault or felony;
- duty as a member of any military, naval or air organization;
- taking part in a riot or in any declared or undeclared war;
- flying in any aircraft as a pilot or crew member;
- experimental flying or flying for the purpose of training;
- riding, driving or testing a vehicle used in a race or speed contest;
- taking part in the sports of parachute jumping, skydiving or hang gliding; or
- operating a motor vehicle while under the influence of alcohol or drugs, as defined by state law.

The **Schedule of Benefits** indicates whether accidental death and dismemberment coverage is 24-hour or nonoccupational. 24-hour coverage provides for Accidents which are associated with employment or occupation, as well as Accidents which are not. Nonoccupational coverage provides only for Accidents which are not associated with employment or occupation.


## Group Term Life Insurance for Dependents

In the event of the death of a Dependent while insured for this Group Term Life Insurance for Dependents, we will pay the Group Term Life Insurance amount stated in the **Schedule of Benefits** for the Dependent.

We will pay the Group Term Life Insurance amount when we receive proof of the Dependent's death.

The Certificateholder will always be considered the Beneficiary for Group Term Life Insurance benefits for Dependents. Payment will be made in one sum.

# How and When Coverage Stops

The provisions in this section apply to all group coverage except as otherwise specified.

## Termination of Coverage

Group coverage ends for a Certificateholder and his/her Dependents on the earliest of the following dates:

- the date the Group Policy is ended;
- the date coverage for the Group is ended under the Group Policy;
- any termination date stated for the Certificateholder in the coverage description appearing in the **Schedule of Benefits**; or
- the day before the monthly premium due date on which:
  - the Certificateholder no longer meets the definition of an Eligible Person (for example, the Eligible Person ends employment or is no longer in an eligible class); or
  - the Certificateholder fails to pay any premium contribution due.

In addition to the above dates, coverage ends for a Dependent on the following dates:

- the date that a Dependent no longer satisfies the definition of a Dependent; or,
- the date stated in the Schedule of Benefits as a termination date for any Dependent coverage.

## Continuation of Coverage

The Group may continue coverage beyond the date it would otherwise end only as described in the **Schedule of Benefits**. All continued coverage is subject to payment of the required premium by or through the Group. All continued coverage must be provided by the Group under a plan which is nondiscriminatory in nature. Termination of the Group Policy, or of the Group's coverage under the Group Policy, will terminate any continued coverage.

## Conversion Privilege

For Group Life Insurance, a Covered Person has the right to convert (change Group Life Insurance to individual whole life insurance) if the Covered Person's Group Life Insurance ends:

- because the Covered Person's coverage ends for a reason other than the Group Policy ending or changing, or the Group's coverage under the Group Policy ending or changing. The coverage may be converted by applying to us in writing within 31 days after the coverage ends and paying the premium due on the new policy.

eff 01/01/2007

If the Certificateholder does not receive written notice of the conversion right at least 15 days before the end of the 31-day conversion option election period, the Covered Person will have an additional period to make application and pay the premium. This additional period will be 15 days immediately following the date the Covered Person receives written notice. However, in no event will the Covered Person have more than 91 days after Group Life insurance ends to make application.

The new policy will be an individual life insurance policy. The Covered Person may choose to be insured for the same amount as insured under the Group Policy, or less. The new premium amount will be figured according to the age and the class of risk to which the Certificateholder belongs. We will not require Evidence of Insurability. The new policy will become effective on the date the Group Life Insurance ends, if application and premium were received as required above.

- because the Group Policy ends or changes, or the Group's coverage under the Group Policy ends or changes. The Covered Person may convert the Group Life Insurance which has been in effect under the Group Policy for at least five years. Except for the amount of insurance that may be converted, the rights of conversion and the conditions that must be met are the same as those in the preceding paragraph. The amount of insurance that may be converted will not be more than:

  - the amount the Covered Person was insured for under the Group Policy minus any other coverage under a new or reinstated group life policy which becomes available within 31 days after the end of, or a change in, the Group Policy or the Group's coverage under the Group Policy; or
  - $10,000;

whichever is less.

If the Covered Person's death occurs after group coverage ends, but within the 31-day period during which the Covered Person can exercise the conversion right, we will pay the Covered Person's Beneficiary whether or not the Covered Person applied to convert the insurance. The benefit paid will be the amount the Covered Person could have converted. However, no death benefit will be payable under these provisions if the death benefit is payable under any other provisions of the Group Policy.

eff 01/01/2007

# General Provisions

## Claims

### Proof of claim

We are not liable under the Group Policy unless we receive written proof of claim. The proof must be filed with us within 90 days after the date of loss and must have the data we need to determine benefits. Failure to give us proof within 90 days will not void or reduce the benefit if it is shown that the proof was given as soon as reasonably possible. No proof can be submitted later than one year after the usual 90-day filing period ends, except in the absence of legal capacity.

### Claim Forms

Claim forms usually are available from the Group. If forms are not available, a person may send a written request for claim forms to us. Claim forms will be sent to the person within 15 days. If the person does not receive the claim forms, written proof covering the details of the loss for which the claim is made may be submitted to us without the claim form.

### Physical Examination and Autopsy

We have the right to have a Covered Person examined by a physician of our choice at our expense whenever reasonably necessary while a claim is pending. We may request an autopsy in case of death if this is not forbidden by law.

### Claims Review

Upon our receipt of written proof of claim from the Covered Person or Beneficiary (referred to in this provision as "claimant"), we have:

- 90 days in which to determine and notify the claimant of our decision regarding a death claim; and
- 45 days in which to determine and notify the claimant of our decision regarding any other claim.

In special circumstances, an additional 90-day period may be added to the 90-day determination period for a death claim, and up to two periods of 30 days each may be added to the 45-day determination period for any other claim. If the claim is a special circumstance, we will notify the claimant in writing of the additional time needed.

For questions about benefits, a claim payment, or a claim denial, the claimant may contact us in writing, in person, or by telephone. However, if the claimant is not satisfied with our claim decision, he or she should send us a written appeal. Written appeals regarding death claims must be received in our office within 60 days after the claimant receives our initial decision, and for any other claims, written appeals must be received within 180 days. All written appeals should request another review of the claim, outline the problem and all

previous efforts to resolve the matter, and include any previously unsubmitted documents, records, information, or proof in support of the claim.

Except in special circumstances, the claimant will receive a written answer within 60 days after we receive an appeal regarding a death claim, and within 45 days after we receive an appeal regarding any other claim.  In special circumstances, an additional 60 days for a death claim, and an additional 45 days for any other claim, may be added to these respective deadlines.  If the appeal-based review is a special circumstance, we will notify the claimant in writing of the additional time needed.

**Release of Information**

The Certificateholder agrees that we may request, and anyone may give to us, any information, (including copies of records) about the Covered Person's illness or injury for which benefits are claimed.  Also, that we may give similar information if requested to anyone providing similar benefits to the Covered Person.

**Limitation of Actions**

No legal action may be taken to recover benefits within 60 days after proof of claim has been given.  No such action may be taken later than 3 years after expiration of the time within which proof of claim is required according to the "Proof of Claim" section.


# Beneficiary

The Beneficiary for the Certificateholder's Group Term Life Insurance is the person the Certificateholder names.  The initial Beneficiary is named on the application.

The Certificateholder may change the named Beneficiary at any time by notifying us in writing.  The notice must provide the name of the new Beneficiary and the date that the change is to be effective.  If the effective date for the change is not provided, the change will be effective on the date the notice is received.  If death occurs before a notice of change is received, we will not change any payment we have already made before the notice was received.

The Certificateholder may name more than one Beneficiary.  The Certificateholder may also designate primary and contingent Beneficiaries.  If a primary Beneficiary dies before the Certificateholder, payment will be made to any designated contingent Beneficiary.

If two or more Beneficiaries are named and their respective share of the benefit is not stated, the benefit will be divided equally.  If a Beneficiary dies before the Certificateholder, that Beneficiary's share will pass to the surviving Beneficiaries equally.

eff 01/01/2007

If a Beneficiary is not named or if no Beneficiary is surviving, we will pay the benefits to the Certificateholder's estate, or at our option, to:

- the surviving spouse; otherwise
- the surviving children equally; otherwise
- the surviving parent(s) equally; otherwise
- the surviving brother(s) and/or sister(s) equally; otherwise
- any person who verifies to us that they have incurred funeral or other expenses related to the Covered Person's last illness or death.  The payment to this person will not exceed $500, or the maximum allowed by law, not to exceed $2,500.

If the Certificateholder and the Beneficiary die from the same accident, and the order of deaths cannot be determined, we will pay the benefit as though the Certificateholder survived the Beneficiary.

If any person who is to receive a benefit payment is a minor or is not legally competent, then the benefit payment will be made to the person's legally appointed guardian.


## Misstatements

All statements contained in an application, in the absence of fraud, are deemed representations and not warranties.  Any misstatement used to reduce a benefit, deny a claim, or void insurance must be contained in a written application, a copy of which is provided to the person who made it, or in the event of the person's death, the Beneficiary.

Except as stated below for life insurance, we reserve the right to cancel or rescind coverage for any Covered Person who engages in misrepresentation and/or fraudulent conduct in relation to any claims made for coverage or any application for coverage under the Group Policy.

**For life insurance,** if a Covered Person's age is misstated, we will pay the correct life insurance benefit(s) which apply to the Covered Person's actual age.  In addition, the life premium rate will be adjusted so that the premium paid rate will be adjusted so the premium paid would have been correct for the Covered Person's actual age.  We may make this change back to the date coverage became effective based on the misstated information.  No misstatement, except for misstatement of age, may be used to contest life insurance after it has been in force prior to the contest for a period of two years during the person's lifetime.

# Definitions

This section defines terms which have special meanings. If a word or phrase has a special meaning or is a title, it starts with a capital letter. The word or phrase is defined in this section or at the place in the text where it is used.

**Actively-at-Work or Active Work** – Reporting to a Certificateholder's regular place of employment for the Group and carrying out the regular duties of his occupation for the number of hours required to meet the definition of Eligible Person. The Certificateholder will be considered Actively-at-Work on each day of a regular paid vacation or on a regular non-working day provided that the person was Actively-at-Work on the last working day.

**Beneficiary(ies)** – The person(s) to whom we pay life and accidental death insurance benefits.

**Certificate** – A description of benefits provided under the Group Policy to the Certificateholder.

**Certificateholder** – An Eligible Person who has enrolled for coverage.

**Covered Person(s)** – The Certificateholder and any covered Dependents.

**Dependent** – A Covered Person other than the Certificateholder who is:

- the Certificateholder's spouse;
- the Certificateholder's domestic partner. Domestic partner means a person of the same or opposite sex who has signed a Domestic Partner Affidavit certifying that: he or she is the Certificateholder's sole domestic partner and has been for 6 months or more; he or she is at least 18 years old and mentally competent; neither the Certificateholder nor the domestic partner is related by blood closer than permitted by state law for marriage; he or she is not married to anyone else; and he or she is financially interdependent with the Certificateholder.

  For purpose of this Certificate, a domestic partner shall be treated the same as spouse, and wherever the term "spouse" appears, the same will apply to a domestic partner, with the exception of the Beneficiary provision. Any federal or state law which applies to a Certificateholder's spouse or child under this Certificateholder shall also apply to a domestic partner or a domestic partner's child who is covered under this Certificate. A domestic partner's or a domestic partner's child's coverage ends on the date of dissolution of the domestic partnership.

  To apply for coverage as a domestic partner, both the Certificateholder and the domestic partner must complete and sign the Affidavit of Domestic Partnership in addition to any enrollment application, and must meet all criteria stated in the Affidavit. Signatures must be witnessed and notarized by a notary public. We reserve the right to make the ultimate decision in determining eligibility of the domestic partner.

eff 01/01/2007

- the Certificateholder's or spouse's unmarried child (includes natural child, adopted child, child for whom your adoption is pending, or a stepchild.);
- an unmarried child who is related to the Certificateholder or the Certificateholder's spouse, such as a niece, nephew or grandchild (these children must live with the Certificateholder and be allowed as a federal tax exemption);
- an unmarried child for whom the Certificateholder or spouse has legal guardianship or permanent legal custody with financial responsibility.

Any minimum or maximum age is stated in the **Schedule of Benefits.**

**Effective Date** – The date when coverage begins.

**Eligible Person** – A person who:

- is a member of an eligible class and has satisfied the Group's eligibility waiting period;
- is an employee working the required number of hours per week on a regular basis, as documented on the Group's federal or state payroll records; and
- is Actively-at-Work, except as provided in the Continuation of Coverage section.

An Eligible Person may also include a retiree under the Group's formal retirement program but only if retiree coverage is approved by us.

**Evidence of Insurability** – A statement of an individual's present medical condition and past medical history and other relevant information, on a form approved by us, that indicates a person is acceptable for insurance, as we may determine.

**Family Status Change** – One of the following events:

- the Certificateholder's marriage or divorce;
- the birth or adoption of a child of the Certificateholder;
- the death of the Certificateholder's spouse or child;
- the commencement or termination of employment of the Certificateholder's spouse; or
- the taking of unpaid leave of absence by the Certificateholder or Certificateholder's spouse.

**Group** – The entity named as the "Group" on the Certificate cover. If no Group is specifically named, then the Group is the Policyholder (as indicated in the Certificate "Introduction".)

**Group Life Insurance** – Any of the following coverages which may be in force for the Certificateholder under the Group Policy: Group Term Life Insurance and Group Term Life Insurance for Dependents.

eff 01/01/2007

## NOTICE TO CERTIFICATEHOLDERS

We are here to serve you.

As our Certificateholder, your satisfaction is very important to us.  If you have a question about your certificate, if you need assistance with a problem, or if you have a claim, you should first contact us at 1-800-521-7265.  Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

>Consumer Services Division
>Indiana Department of Insurance
>311 West Washington Street, Suite 300
>Indianapolis,  IN  46204-2787
>317-232-2395 or 1-800-622-4461

21                                eff 01/01/2007

# **Anthem**®Life

Anthem Life Insurance Company
P.O. Box 182361
Columbus, Ohio  43218-2361
614-436-0688
800-551-7265

eff 01/01/2007



Anthem Life Insurance Company
P.O. Box 182361
Columbus, Ohio 43218-2361
614-436-0688
800-551-7265